The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Jan Pittman. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. At the time of the hearing, the parties stipulated to the Form 28B contained in the Industrial Commission's file dated September 30, 1992.
2. At the time of the hearing, the parties stipulated that the plaintiff's last date of work was March 24, 1994.
3. At the time of the hearing, the parties furthermore stipulated that no surgery was being recommended for treatment of plaintiff's back condition at this time.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. Plaintiff is a 39 year old married male registered nurse who sustained an admittedly compensable injury by accident during the course of his employment with defendant-employer on April 7, 1992 when he felt a burning sensation in his back which radiated down his left leg while lifting a patient from a bed onto a stretcher.
2. Plaintiff was initially treated by Dr. Caudle on April 8, 1992 and was subsequently referred to Dr. Gwinn of Triangle Spine and Back Care Center on May 20, 1992.
3. Plaintiff saw and was evaluated by Dr. Gwinn on May 22, 1992 and Dr. Gwinn prescribed physical therapy and conservative treatment for plaintiff. However, Dr. Gwinn subsequently referred plaintiff to Dr. Fulghum of his office for surgical evaluation.
4. Plaintiff initially saw Dr. Fulghum on July 1, 1992 and subsequently following a discogram performed on October 29, 1992, plaintiff was scheduled for fusion surgery which was performed on December 28, 1992. Said surgery consisted of spinal fusion which utilized Steffe plates and fixation screws.
5. Following said surgery, plaintiff remained under the care of Dr. Fulghum and upon reaching maximum medical improvement was subsequently released to return to work as of July 13, 1993 with restrictions of no lifting of greater than fifty pounds; avoiding activities requiring frequent bending, stooping and turning movements; no working more than eight hours per day; and plaintiff being allowed to change positions, alternating sitting or standing at least once every hour.
6. On July 20, 1993, plaintiff returned to employment with defendant-employer as a staff nurse, a position available with defendant-employer which was slightly modified and was within the job restrictions as set forth by Dr. Fulghum. However, from the beginning, plaintiff disagreed with the restrictions set by Dr. Fulghum regarding his work capacity and so informed defendant-employer prior to his return to work in July 1993. For example, plaintiff stated that he should be limited to lifting less than twenty pounds and should not be required to push or pull carts weighing twenty-five pounds. Furthermore, plaintiff advised that he did not want to return to work in the clinic, but wished to be assigned as a charge nurse in a hospital setting.
7. When released to return to work by Dr. Fulghum in July 1993, Dr. Fulghum rated plaintiff with a 20% permanent partial disability to his back as a result of the injury of April 7, 1992. Thereafter, based on the accuracy of this rating, defendants and plaintiff entered into the Form 26 agreement which was approved on October 20, 1993 pursuant to which defendants paid plaintiff benefits for said 20% disability. The rating given plaintiff by Dr. Fulghum in July 1993 was based on Dr. Fulghum's inaccurate reading of the workers compensation guidelines and Dr. Fulghum subsequently testified that he should have rated plaintiff with a 30% permanent partial disability to the back at the time plaintiff reached maximum medical improvement in July 1993. Therefore, the undersigned finds that the Form 26 being based on a mutual mistake of the parties regarding plaintiff's disability rating is hereby set aside.
8. At the time plaintiff reached maximum medical improvement in July 1993, plaintiff had sustained a 30% permanent partial disability to his back as a result of the April 7, 1992 injury. This impairment rating took into consideration the fact that plaintiff would continue to experience episodes of exacerbation of his back and leg pain.
9. In the Fall of 1993, around the end of October or beginning of November, plaintiff was assigned to the position of medication nurse which was an eight hour position which allowed plaintiff to change positions, did not require him to lift over fifty pounds and did not require plaintiff to engage in significant bending or stooping. Therefore, this position was within plaintiff's physical capacity. Furthermore, this position is one for which defendant-employer regularly hires personnel.
10. Plaintiff returned to see Dr. Fulghum in December 1993 relating increasing discomfort for the past several weeks associated with burning in his left calf and foot. Following his examination of plaintiff, Dr. Fulghum referred plaintiff for CT-scan and myelogram which revealed no evidence of nerve root impingement. As anticipated, plaintiff would have exacerbations of his back and leg pain on occasions and in Dr. Fulghum's opinion, based on his evaluations and testing of plaintiff, plaintiff's condition remains the same as it was in July 1993.
11. In February 1994, plaintiff underwent an independent medical examination with Dr. Garner, another neurosurgeon, who agreed with the 20% permanent partial disability rating given plaintiff by Dr. Fulghum. During Dr. Garner's examination, he noted inconsistencies during straight leg raising testing of plaintiff. This evaluation likewise revealed no evidence of nerve root impingement.
12. Plaintiff also underwent a functional capacity evaluation at the HORA facility in February 1994. Inconsistencies were also noted in plaintiff's performance during this evaluation which indicated that plaintiff failed to exhibit maximum effort during testing and was magnifying his symptoms. Therefore, the findings regarding plaintiff's physical capacity as demonstrated by his performance during said evaluation were not accurate and plaintiff's physical capacity is greater that said evaluation indicated.
13. Following the functional capacity evaluation in February 1994, although said evaluation was invalid due to plaintiff's lack of effort and symptom magnification, plaintiff requested that defendant-employer provide him with employment within the restrictions set forth by said functional capacity evaluation although as previously found, plaintiff possessed greater physical capacity and informed defendant-employer that he felt that the duties of medication nurse were greater than his physical capacity. Defendant-employer did not have a position available for plaintiff within the restrictions submitted by plaintiff and his counsel; therefore, plaintiff was placed on a medical leave of absence as of March 25, 1994.
14. Plaintiff, on his own, was seen and evaluated by Dr. Califf, an orthopedist, who first saw plaintiff on June 15, 1994. Following his examination, Dr. Califf rated plaintiff with a 30% permanent partial disability to his back and a 10% permanent partial disability to his leg. In arriving at his opinion on plaintiff's work capacity, Dr. Califf relied on the functional capacity evaluation performed in February 1994 which limited plaintiff to sedentary to light work. However, as aforementioned, said evaluation due to plaintiff's lack of effort and symptom magnification is invalid and not indicative of plaintiff's actual capacity. As regards the 10% disability assigned to plaintiff's left lower extremity, any problems plaintiff is having with his left lower extremity result solely from his back condition.
15. The medical evidence of record reveals that plaintiff does not need additional surgery for treatment of his back condition. Furthermore, while Drs. Garner and Califf recommended referral of plaintiff for pain management, the evidence of record reveals that plaintiff does not suffer from disabling pain but retains the capacity to perform the medication nurse's position provided to him by defendant-employer following his return to work in July 1993 and which he was performing when last employed by defendant-employer on March 24, 1994. This employment with defendant-employer did not require plaintiff to respond to "crisis situations" as other employees were available at those times and did not require plaintiff to engage in stooping, squatting, kneeling or other activities outside plaintiff's physical capacity.
16. Furthermore, Dr. Garner's opinion that plaintiff be referred for pain management was based on plaintiff's history that he was taking narcotic medications for control of his pain. However, medical records do not reveal any narcotic medications being prescribed for plaintiff since 1993; and Dr. Califf's recommendation being based on the invalid functional capacity evaluation, plaintiff has failed to prove that referral for pain management would tend to effect a cure, lessen his disability or provide him relief. However, plaintiff is entitled to further medical treatment for his back condition as necessary during periods of exacerbation of his back pain.
17. Plaintiff has not sustained a material change for the worse in his back condition since July 13, 1993. Plaintiff's loss of earnings after March 24, 1994 did not result from the injury by accident he sustained during the course of his employment with defendant-employer on April 7, 1992.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. The Form 26 agreement previously approved in this matter on October 20, 1993 is hereby set aside based on mutual mistake of the parties. G.S. § 97-17.
2. As a result of the injury by accident giving rise hereto, plaintiff has sustained a 30% permanent partial disability to his back; and therefore, is entitled to permanent partial disability compensation benefits at the rate of $423.76 per week for thirty weeks for said additional 10% permanent partial disability. G.S. § 97-31 (23).
3. Plaintiff is entitled to have defendants provide all medical treatment arising from his injury by accident including treatment during periods of exacerbation of plaintiff's back pain to the extent said treatment tends to effect a cure, give relief or lessen plaintiff's disability. However, plaintiff has failed to prove that referral for pain management would tend to effect a cure, give relief or lessen his disability.
4. Plaintiff has failed to prove that he has sustained a material change for the worse in the back condition he sustained as a result of the injury giving rise hereto. G.S. § 97-47.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendants shall pay compensation to plaintiff at the rate of $432.76 per week for thirty weeks for his additional permanent partial disability. Said compensation has accrued and shall be paid in a lump sum subject to the attorney's fee hereinafter approved.
2. Defendants shall pay all medical expenses incurred by plaintiff as a result of his injury by accident.
3. An attorney's fee in the amount of 25% of the compensation awarded herein is hereby approved for plaintiff's counsel which shall be deducted from the aforesaid award and paid directly to counsel for plaintiff.
* * * * * * * * * * *
ORDER
1. Plaintiff's claim for additional benefits pursuant to the provisions of the North Carolina Workers' Compensation Act is hereby DENIED.
2. Defendants shall pay an expert witness fee in the amount of $225.00 to Dr. Fulghum.
3. Defendants shall pay the costs.
4. Defendant's motion to dismiss is DENIED.
FOR THE FULL COMMISSION
 S/ ________________ COY M. VANCE COMMISSIONER
CONCURRING:
S/ ___________________ BERNADINE S. BALLANCE COMMISSIONER
S/ ________________ DIANNE S. SELLERS COMMISSIONER
CMV/cnp/mj 12/14/95